## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| DEFEND ARLINGTON, ) | |
| C/O SAVE SOUTHERN HERITAGE FLORIDA, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | No. 23-cv-1730 (RDA/JFA) |
| ) | |
| UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTIVE RELIEF

Having had their claims against Defendants[1] dismissed from the U.S. District Court for the District of Columbia, Plaintiffs now seek a second bite at the apple, again claiming the Army's removal of the Confederate Memorial ("the Memorial") from Arlington National Cemetery ("ANC") violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*. But to the extent Plaintiffs bring the same claims decided in their prior lawsuit, *Defend Arlington v. U.S. Dep't of Defense*, No. 23-441, 2023 WL 8600567 (D.D.C. Dec. 12, 2023), their arguments are barred under the principle of *res judicata*. And to the extent they allege the Army failed to consider the effects of disposition of the Memorial (as opposed to the method of removal), that independent action may be separately evaluated under NEPA at a later date. In either case, Plaintiffs cannot show a likelihood of success on the merits necessary to secure temporary injunctive relief.

---

[1]     Defendants are the United States Department of Defense ("DOD"), Secretary of Defense Lloyd Austin, Under Secretary of Defense for Acquisition and Sustainment William LaPlante, the United States Department of the Army ("Army"), and Secretary of the Army Christine Wormuth.

Moreover, Plaintiffs fail to demonstrate likelihood of irreparable harm.  Instead, the declaration on which they rely inaccurately describe the method of removal of the Memorial. And Plaintiffs utterly dispense with addressing whether injunctive relief serves the public interest; here, where Defendants act to further the explicit directive of Congress, it plainly does not.

In sum, the Court should deny Plaintiffs' request for injunctive relief and immediately dissolve the Temporary Restraining Order, ECF No. 6, to permit Defendants to proceed with removal without further delay.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Statutory Directive for Removal

In the Fiscal Year 2021 National Defense Authorization Act ("NDAA"), Congress created the Commission on the Naming of Items of the Department of Defense ("Naming Commission") and vested it with exclusive statutory authority to "develop a plan to remove . . . monuments . . . that commemorate the Confederate States of America."  Fiscal Year 2021 NDAA, Pub. L. No. 116-283, § 370(c)(4), 134 Stat. 3388, 3553 (2021).  The NDAA directs that, among other things, "[t]he Commission shall assess the cost of renaming or removing names, symbols, displays, monuments, or paraphernalia that commemorate" the Confederacy, "develop procedures and criteria to assess whether an existing name, symbol, monument, display, or paraphernalia" in fact commemorates the Confederacy, "recommend procedures for renaming assets of the Department of Defense to prevent commemoration" of the Confederacy, "develop a plan to remove [Confederate] names, symbols, displays, monuments, or paraphernalia within the timeline established by th[e] Act;" and "include in the plan procedures and criteria for collecting and incorporating local sensitivities associated with naming or renaming of assets of

2

the Department of Defense." *Id.* at §§ 370(c)(1)-(5).  The statute further directs that "not later than October 1, 2022, the Commission shall present a briefing and written report detailing the results of the requirements under [§ 370](c)." *Id.* at § 370(g).

The 2021 NDAA directs that, upon completion of the Naming Commission's work, the Secretary of Defense "*shall* implement the plan submitted by the [C]ommission," and "remove all names, symbols, displays, monuments, and paraphernalia" that the Naming Commission has designated for removal.  *Id.* at § 370(a) (emphasis added).  The statute also provides that DOD "shall implement the plan" "not later than three years after the date of the enactment of th[e] Act."[2]

In September 2022, the Naming Commission concluded its work by publishing Part III of its three-part Final Report to Congress, which addresses the Confederate Memorial.  *See* Ex. A, Naming Commission, *Final Report to Congress Part III: Remaining Department of Defense Assets*, at 15-16, 23 (Sept. 2022) ("Final Report").  After conducting the review required under NDAA § 370(c), the Naming Commission concluded that the Confederate Memorial is a "monument" "within its remit," *id.* at 15, and defined the monument as "consist[ing] of a bronze statue, frieze, and base; atop a granite plinth and base; all resting on an underground foundation." *Id.*  The Naming Commission discussed the alternatives to removal "at length," and considered whether any alternative would cause "disturbance to adjacent graves." *Id.*  Ultimately, the Naming Commission decided that "contextualization was not an appropriate option," and made the following binding recommendation to the Secretary of Defense:

> The statue atop of the monument should be removed.  All bronze elements on the monument should be deconstructed, and removed, preferably leaving the granite

---

[2]      The NDAA was enacted on January 1, 2021.  Under § 370(a) the NDAA effectively sets a January 1, 2024, deadline for the implementation of the Naming Commission's plan and the removal of monuments "that honor or commemorate the Confederate States of America."

base and foundation in place to minimize risk of inadvertent disturbance of graves. The work should be planned and coordinated with the Commission of Fine Arts and the Historical Review Commission to determine the best way to proceed with removal of the monument.  The Department of Army should consider the most cost-effective method of removal and disposal of the monument's elements in their planning.

*Id*.

## II.     Defendants' Compliance with Congress's Directive.

As required by statute, Secretary of Defense Austin ordered DOD to begin the planning process to implement the Naming Commission's mandate.  *See* Ex. B ("October 6, 2022 Mem."). Heeding the NDAA's requirements, Secretary Austin "committed to implementing all of the Commission's recommendations as soon as possible, subject to the expiration of the 90-day waiting period mandated by section 370(g), and no later than January 1, 2024," and "direct[ed] the relevant DoD and Office of the Secretary of Defense [ ] Component heads to begin planning for implementation of the Commission's recommendations immediately."  *Id*. at 1.

The Army has jurisdiction over Arlington National Cemetery and holds responsibility for carrying out the Naming Commission's recommendations with respect to the Confederate Memorial.  *See* 10 U.S.C. § 7721.  As part of that responsibility, the Army has conducted a review under NEPA.  On August 4, 2023, the Army published a Notice of Intent ("NOI") to prepare an Environmental Impact Statement ("EIS").  88 Fed. Reg. 149 (Aug. 4, 2023). However, on November 3, 2023, the Army announced intent to withdraw the NOI because it had:

[D]etermined the congressionally-mandated removal action is a non-discretionary action.  There would be no reasonably foreseeable significant impacts from any discretionary elements of the proposed action. An EIS is therefore not needed to inform any decision-making for this action. The Army will prepare an Environmental Assessment (EA) to analyze and disclose any effects of the discretionary elements of the proposed action, including how to disassemble the Confederate Memorial.

88 Fed. Reg. 75,564-65 (Nov. 3, 2023).  The Army also explained that "[t]he public scoping

process did not reveal evidence of any reasonably foreseeable significant impacts resulting from

discretionary actions.  Overwhelmingly, public comments during the scoping process focused on

the non-discretionary action of removing the Confederate Memorial from ANC."  *Id*. at 75,565.

As a result, "[t]he Army will prepare an EA to analyze discretionary actions (i.e., how to

disassemble and remove the Confederate Memorial's bronze elements)."  *Id*.

      In keeping with that announcement, on November 17, 2023, the Army published a

Final EA and draft Finding of No Significant Impact ("FONSI") analyzing the effects of the

manner of removal of the Memorial.  Ex. C, Durham-Aguilera Decl. ¶ 4; *see also* Ex. D (Final

EA).  The Army accepted comments on the draft FONSI through December 2, 2023, and signed

the final EA and FONSI on December 16, 2023, completing the NEPA process.  Durham-

Aguilera Decl. ¶ 4; *see also* Ex. E (Final FONSI).  Removal of the Memorial began on December

17, 2023 "with the placing of fencing and the staging of equipment for removal of the

Memorial," and "[w]ork on the actual removal of the Memorial" began on December 18, 2023.

Durham-Aguilera Decl. ¶ 6.

### III.    Prior Litigation

      This case is the fourth challenging Defendants' removal of the Memorial.  The first two,

*Defend Arlington* and *Hudson v. Dep't of Defense*, No. 23-2094, were consolidated in the U.S.

District Court for the District of Columbia and resolved by Judge Howell on December 12,

2023.[3]  Relevant here, that court found that: (1) in carrying out plans to remove the Memorial,

"DOD followed an unambiguous statutory command, and its actions thus cannot be considered

arbitrary or capricious or in excess of statutory authority," Ex. F, 2023 WL 8600567, at *10; (2)

---

[3]    *Hudson* was originally filed in this Court but was subsequently transferred to the District
Court for the District of Columbia by Judge Brinkema.

"[o]nce the Commission has made its recommendation, NDAA § 370 leaves DOD no discretion on the question whether to comply," *id.* at *12; (3) "[w]here the government does not have discretion or decisionmaking power, the APA is not the appropriate vehicle for review," *id.*; and (4) plaintiffs failed to state a claim under NEPA because the statute does not "apply to nondiscretionary agency action." *Id.* at *14.

The third case, *Moran v. Austin*, No. 23-1681, was filed on December 8, 2023. Earlier today, Judge Giles denied the plaintiff's request for emergency injunctive relief for failure to comply with Federal Rule of Civil Procedure 65(b). *See* Ex. G (*Moran* Dec. 18, 2023, Order).

Fourth, the instant matter was filed yesterday, Sunday, December 17, 2023. Earlier today, the Court granted Plaintiffs' *ex parte* request for a temporary restraining order, and set a hearing for Wednesday, December 20 (later rescheduled to tomorrow, December 19). *See* ECF Nos. 6, 8. In addition, Defendants also filed a motion to vacate the temporary restraining order due to Plaintiffs' failure to comply with the requirements of Federal Rule of Civil Procedure 65(b)(1)(B). ECF No. 9.

## LEGAL BACKGROUND

NEPA "sets forth a regulatory scheme for major federal actions that may significantly affect the natural environment." *Nat'l Audubon Society v. Dep't of Navy*, 422 F.3d 174, 184 (4th Cir. 2005). NEPA does not demand particular results, but "merely prohibits uninformed—rather than unwise—agency action." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989); *see also Nat'l Audubon Society*, 422 F.3d at 184 ("NEPA is a procedural statute; it does not force an agency to reach substantive, environment-friendly outcomes."). Thus, NEPA "simply requires that the agency take a 'hard look' at environmental impacts before taking major actions." *Nat'l Audubon Society*, 422 F.3d at 184.

## STANDARD OF REVIEW

Plaintiff seeks emergency injunctive relief—"an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  Such a request "involv[es] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017) (quoting *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 339 (4th Cir. 2001)).  In order to be eligible for a preliminary injunction, Plaintiff must make a "clear showing" as to *all* four factors: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and, (4) the public interest favors equitable relief.  *Winter*, 555 U.S. at 20, 22; *see also See Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, No 10-616, 2011 WL 119565, at *2 (E.D. Va. March 1, 2011) (standard also applies to issuance of temporary restraining orders). Where, as here, the injunctive relief is sought against the federal government and implicates a matter of great public interest, the last two factors overlap and may be considered together.  *Nken v. Holder*, 556 U.S. 418, 436 (2009).

The requirement for showing a clear likelihood of success on the merits "is far stricter than a requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Sarsour*, 245 F. Supp. 3d at 729 (alterations and quotation marks omitted; emphasis in original). So too, a plaintiff must "demonstrate more than just a 'possibility' of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

## ARGUMENT

Plaintiffs fall far short of demonstrating an entitlement to emergency injunctive relief. Their arguments on the merits are either precluded on *res judicata* grounds by the *Defend*

7

*Arlington* decision or otherwise contrary to established caselaw.  Their arguments as to irreparable harm stem from mistaken factual assertions.  And they utterly fail to grapple with the fact that Defendants seek to implement a Congressional directive, and thus act in the public interest.

I.      **Plaintiffs Cannot Show a Likelihood of Success on the Merits.**

A.  **Plaintiffs' NEPA Claims as to Removal of the Memorial Are Barred.**

To the extent Plaintiffs appear to argue that Defendants erred by failing to evaluate the removal of the Memorial itself under NEPA (as opposed to the *method* of removal), those claims are barred.  Pls.' Mem. at 4 ("Defendants have neither evaluated the environmental consequences of implementation of the Commission's recommendation to remove the Memorial from ANC, nor have they considered any alternatives to the proposed action as mandated by NEPA.").

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Pueschel v. United States*, 369 F.3d 354 (4th Cir. 2004) (citation omitted).  "For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."  *Id*.

Judge Howell's decision in *Defend Arlington* meets all three factors.  First, dismissal of Plaintiffs' claims in that case is plainly a judgment on the merits.  *See Franklin v. Dominion Energy Inc.*, No. 22-361, 2022 WL 10668932, at *3 (D. Md. Oct. 18, 2022) (noting dismissal for failure to state a claim "operates as an adjudication on the merits") (citation omitted).  Second, that suit and this one each feature NEPA claims.  And, third, the Plaintiffs and Defendants are identical.  As such, Plaintiffs' NEPA claims as to the removal of the Memorial itself are barred.

*See W. Radio Services Co, Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (finding claim preclusion barred NEPA claims litigated in prior action); *see also Defend Arlington*, 2023 WL 8600567, at *14 (dismissing Plaintiffs' NEPA claims).

   **B.  Plaintiffs Fail to Establish That the Army's EA is Flawed.**

   To the extent that Plaintiffs may be challenging the Army's compliance with NEPA due to an alleged failure to evaluate the ultimate disposition of the Memorial, that argument too is without merit.  Specifically, Plaintiffs contend that Defendants are attempting to evade environmental review by piecemealing the project into two parts—(1) the removal action; and (2) the final disposition of the Memorial—in an attempt to segment the action and avoid a finding of significant impacts.  *Id.*  According to Plaintiffs, the actions lack independent utility because removal and disposition are "inextricably intertwined."  Pls.' Mem. at 5.

   Agencies may not engage "in segmentation, which involves 'an attempt to circumvent NEPA by breaking up one project into smaller projects and not studying the overall impacts of the single overall project.'"  *Webster v. U.S. Dep't of Agric.,* 685 F.3d 411, 426 (4th Cir. 2012) (quotation omitted).  But segmentation is distinct from approving only that portion of a project that has been fully and adequately studied.  *Defs. of Wildlife v. N.C. Dep't of Transp.,* 762 F.3d 374, 397 (4th Cir. 2014).  NEPA does not prohibit "Defendants from authorizing only one part of the Project so long as doing so does not commit them to a course of action that has not been fully analyzed."  *Id*.

   Here, Defendants have complied with NEPA as to the authorized project at issue (the manner of removal of the Memorial), and explained that:

> Subsequent and appropriate analysis will be developed supporting a decision on final disposition.  The Army's action in complying with Congressional direction to remove the Memorial has independent utility from any later decision-making on disposition of the statue, and the two actions do not affect overlapping

> environmental resources (any effects on resources from the removal action will be confined to a section within ANC; any effects to resources associated with disposition of the statue will occur wherever the statue ultimately is moved).

Ex. D at 23.  Said differently, the independent utility of assessing the manner of removal was to comply with Defendants' non-discretionary obligation under the NDAA.  *See Defend Arlington*, 2023 WL 8600567, *11.  The specific disposition of the Memorial, however, is not outlined by the NDAA, and instead will be determined, in part, by the process detailed in the National Historic Preservation Act Programmatic Agreement ("PA") between ANC, the Virginia State Historic Preservation Officer, and the Advisory Council on Historic Preservation.  Ex. I, PA (Dec. 15, 2023).  As such, the two actions will fulfill different goals, serving different purposes, and thus have "independent utility" under NEPA.  *See Webster*, 685 F.3d at 426 (agency not required to consider separate, speculative project).

Finally, to the extent Plaintiffs argue the Army failed to consider the effects of disposition of the Memorial, that independent action will appropriately be separately evaluated under NEPA at a later date.  Thus, any challenge is not yet ripe.  *See NAACP v. Bureau of the Census*, 945 F.3d 183, 189 (4th Cir. 2019) (final agency action is prerequisite to review under the APA).

## II.      Plaintiffs' Allegations of Irreparable Harm Are Based on Factual Inaccuracies.

In support of their request for injunctive relief, Plaintiffs rely on the declaration of a sole member of their organizations, Lunelle Siegel.  ECF No. 3.  Her declaration makes the following assertions: (1) that the Army is failing to protect graves and grave markers near the site, *id*. ¶ 4; and (2) that "one of the four grave markers, located close to the base of the Memorial has been removed and there is a crane sitting on top of the gravesite," *id*. ¶ 5.  Each is inaccurate,

particularly to the extent they support the apparent representations of Plaintiffs' counsel that the removal "involves the disturbance of gravesites."  ECF No. 6 at 1 n.1.

As to the first assertion, the Army is "using the same protective techniques" it employs in "usual ANC burial operations."  Ex. H, Yates Decl. ¶ 3.  For example, the Army is using an existing pathway to move equipment and avoid "interfering with grave sites or grave markers in the primary burial area."  *Id*. ¶ 4.  Further, the crane being used to remove the Memorial is operating "from the asphalt road referred to as McPherson Drive" and "will not enter" the area near the Memorial at all.  *Id*. ¶ 9.  Ms. Siegel's bare speculation is insufficient to support injunctive relief.  *See Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 543 (E.D.N.C. 2020) ("bare assertion" insufficient to obtain injunctive relief).

As to the second assertion, Ms. Siegel is correct that grave markers have been removed; however, this is not due to damage but is to protect the markers "[b]ecause of the need for equipment to move around the Memorial."  *Id*. ¶ 7.  "Removal of a headstone is often required when work is being done near grave markers to ensure no damage occurs," and the "headstones will be replaced when the site is restored upon completion of work."  *Id*.  Moreover, "[t] protect the gravesites adjacent to the Memorial, the turf over the graves has been covered with wood and/or metal planking so the equipment can operate without damaging the ground underneath." *Id*. ¶ 8.  This is the "standard and routine process for protection of graves when heavy equipment is required" in ANC.  *Id*.  Indeed, this protective measure was specifically noted in the NHPA PA.  Ex. I at 13; *see also* Final EA at 44-45 ("[t]he limited nature of the proposed undertaking should have no adverse effect on the graves in Section 16 or on any known archaeological resources in that area.").  Had Plaintiffs conferred with Defendants on this point before seeking injunctive relief, Defendants could have explained the necessity of these protective measures.

11

As such, Plaintiffs' contention that gravesites are being disturbed is flatly mistaken, and the Court should consequently find Plaintiffs have failed to carry their burden of demonstrating irreparable harm.  *See Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (plaintiff bears the burden of showing a "sufficient factual basis" for granting the injunction "beyond the unverified allegations in the pleadings.").

So too, Plaintiffs' contention that once deconstructed the Memorial will be permanently damaged is wrong.  Pls' Mot. at 2; *see also* Pls.' Mem. at 2.  Instead, the PA" explicitly provides for "disposition" of the Memorial and notes "potential reassembly" as an option.  *Id*.  Indeed, as explained further below, continuing the current injunction is what poses a threat of irreparable injury to the Memorial.

Additionally, and assuming that *res judicata* does not bar their claims, Plaintiffs' delay in bringing this motion also weighs against a finding of irreparable harm.  *See Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.,* 23 F. App'x 134, 138 (4th Cir. 2001) ("any delay attributable to plaintiffs in initiating a preliminary injunction request, coupled with prejudicial impact from the delay, should be considered when the question of irreparable harm to plaintiffs is balanced against harm to defendants") (citation omitted).  Plaintiffs' case in *Defend Arlington* was dismissed on December 12, yet they waited almost a full week before filing here.

III.   **Public Interest Strongly Favors Allowing Removal to Proceed as Planned.**

As one court has explained, "governmental action pursuant to a statutory scheme is 'taken in the public interest.'"  *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 n.15 (10th Cir. 2006); *see also K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1279 (S.D. Fla. 2011).  Here, Congress directed the removal of the Memorial via the determinations of the Naming

Commission and mandated the deadline for doing so.  Plaintiffs' request for an injunction after the fact would frustrate that clear legislative intent and is thus contrary to the public interest.

Indeed, the current state of removal argues in favor of denying Plaintiffs' motion and permitting Defendants to proceed as promptly as possible.  Specifically, when the Temporary Restraining Order issued, "the contractor was preparing to secure" the statue on top of the Memorial for removal, "and 6 of the 8 bolts that secure" the statue had been removed.  Yates Decl. ¶ 12.  As a result, "the statute is not secure" and "the entire integrity of the Memorial is at risk as the bolts are the key elements that secure the [s]tatute to the interior superstructure which ensures the entirety of the Memorial remains upright."  *Id*.  Accordingly, any public interest in preserving the Memorial is only threatened by the injunctive relief that Plaintiffs seek.

The Naming Commission specifically provided that the Memorial be removed with as little damage as possible to allow for potential disposition.  An injunction that would prevent Defendants' continued careful removal thus runs contrary to legislative intent in the 2021 NDAA, further arguing against Plaintiffs' requested relief.

## **CONCLUSION**

For the foregoing reasons, as well as those stated in Defendants' Motion to Vacate the Temporary Restraining Order, ECF No. 9, the Court should deny Plaintiffs' request for emergency injunctive relief and immediately vacate the existing Temporary Restraining Order.

Respectfully submitted this 18th day of December 2023,


JESSICA D. ABER
United States Attorney

TODD KIM
Assistant Attorney General


13

    /s/_____
REBECCA S. LEVENSON
Assistant U.S. Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3760
Fax: (703) 299-3983
Rebecca.s.levenson@usdoj.gov

GREGORY M. CUMMING (DC Bar No. 1018173)
SARAH RUCKRIEGLE (DC Bar No. 1658781)
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M Street NE
Washington, DC 20002
Telephone: 202.305.0457
gregory.cumming@usdoj.gov

*Counsel for Defendants*