IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEFEND ARLINGTON, C/O SAVE SOUTHERN HERITAGE FLORIDA, *et al.* | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:23-cv-1730 (RDA/JFA) ) |
| UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for hearing following the Court's issuance of a temporary injunction with respect to the United States Department of Defense's removal of the Confederate Reconciliation Memorial at Arlington National Cemetery (the "Memorial") as well as on the Defendants' Motion to Vacate (Dkt. 9) and Memorandum in Opposition to the Temporary Restraining Order (Dkt. 11) and Plaintiffs' oral motion for a Preliminary Injunction.  After oral argument and a review of the issues, the Court DENIES the oral motion for a preliminary injunction and VACATES the Temporary Restraining Order (Dkt. 6).

## BACKGROUND

This case essentially attempts to place this Court at the center of a great debate between individuals extolling the virtues, romanticism and history of the Old South and equally passionate individuals, with government endorsement, who believe that art accentuating what they believe is a harsh depiction of a time when a certain race of people were enslaved and treated like property is not deserving of a memorial at a place of refuge, honor and national recognition. To be sure,

this Court's disposition does not have to resolve this great debate but rather is decided on the relevant case law, statutory law and administrative direction which governs this Court's decision.

Plaintiffs assert that the Memorial is a longstanding memorial in Arlington National Cemetery erected in the early 1900s at the direction and proposition of Sir Moses Ezekial as a symbol of reconciliation and healing.  Dkt. 5 at 1-2.  Significantly, Moses Ezekial's remains are interred at the base of the Memorial.  Dkt. 1 at 6.  Plaintiffs are a series of organizations and individuals concerned with preserving Confederate monuments and "Southern-American heritage."  Dkt. 1.  Plaintiffs also include persons who appear to be distant descendants of Moses Ezekial – but the Complaint does not include the degree of consanguinity of those relationships.[1]

By way of background, on January 1, 2021, Congress enacted Section 370 of the William M. Thornberry National Defense Authorization Act for Fiscal Year 2021 (the "NDAA"), which requires the Secretary of Defense to "establish a commission relating to assigning, modifying, or removing of names, symbols, displays, monuments, and paraphernalia to assets of the department of Defense that commemorate the Confederate States of America or any person who served voluntarily with the Confederate States of America."  Pub. L. No. 116-283, § 370(b), 134 Stat. 3388, 3553 (2021).  This Naming Commission is required to "develop a plan to remove [these] names, symbols, displays, monuments, or paraphernalia" and "present a briefing and written report" to the Committees on Armed Services of the Senate and House of Representatives.  *Id*. § 370(c)(4), (g).  At least 90 days after this briefing and written report, but "[n]ot later than three years after the date of the enactment of this Act," *i.e.* January 1, 2024, "the Secretary of Defense

---

[1] In an affidavit filed in another related case, Plaintiff Paul Robert Ezekial attested that he is "the second cousin three times removed" of Moses Ezekial.  *See Defend Arlington, et al. v. United States Department of Defense, et al.*, No. 23-cv-441, Dkt. 33-3, Declaration of Robert Ezekial filed on December 5, 2023 (D.D.C.).

2

shall implement the plan submitted by the commission . . . and remove all names, symbols, displays, monuments, and paraphernalia that honor or commemorate the Confederate States of America . . . or any person who served voluntarily with the Confederate States of America from all assets of the Department of Defense." *Id*. § 370(a), (g).

On September 19, 2022, the Naming Commission published its Final Report to Congress,[2] which concluded that the Memorial, at dispute here, was a monument "within its remit" that "offers a nostalgic, mythologized version of the Confederacy, including highly sanitized depictions of slavery." Final Report at 15. The Final Report further states that, after "explor[ing] alternatives . . . to removal," the Naming Commission recommended that "[t]he statute atop of the monument" and "[a]ll bronze elements on the monument" be removed, but "preferably leaving the granite base and foundation in place to minimize the risk of inadvertent disturbances to graves." *Id*. at 16.

On October 6, 2022, Secretary of Defense Lloyd Austin issued a memorandum "concur[ring] with all of the Naming Commission's recommendations," "committ[ing] to implementing all of the Commission's recommendations as soon as possible," and "direct[ing] the relevant DoD and Office of the Secretary of Defense (OSD) Component heads to begin planning

---

[2] The Final Report was included in the filings before Judge Howell. *See Defend Arlington, et al. v. United States Department of Defense, et al.*, No. 23-cv-441, Dkt. 33-1, The Naming Commission's Final Report to Congress, Part III: Remaining Department of Defense Assets, filed on November 30, 2023 (D.D.C.). Although Plaintiff's did not attach the Naming Commission's Final Report to the Complaint, the Complaint (Dkt. 1) and the Memorandum in Support of Motion for Temporary Restraining Order (Dkt. 5) both refer to the Naming Commission's decision and the Department of Defense's implementation of that recommendation. *See* Dkt. 1 at 7 ("In that capacity, William LaPlante, issued the January 5, 2023 directive to begin full implementation of the Naming Commission['s] recommendations."); Dkt. 5 at 4 ("Defendants have neither evaluated the environmental consequences of implementation of the Commission's recommendation to remove the Memorial from ANC, nor have they considered any alternatives to the proposed actions as mandated by NEPA.").

for [such] implementation." October 2022 Memorandum.³ On January 5, 2023, Under Secretary of Defense for Acquisition and Sustainment William LaPlante directed all Department of Defense organizations to use existing military resources to begin full implementation of the Naming Commission's recommendations, including with respect to the Memorial. Dkt. 1 at 7.

Before filing this case, the Plaintiffs – with the exception of members of the Ezekial family – filed an action in the District Court for the District of Columbia assigned to Judge Beryl Howell. On December 12, 2023, Judge Howell granted the government defendants' motion to dismiss and denied as moot plaintiffs' motion for a preliminary injunction.⁴ In the D.D.C. Opinion, Judge Howell found that Plaintiffs failed to state a claim under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, because the Secretary of Defense lacked discretion to decide whether to remove the Memorial or to choose not to implement the Naming Commission's recommendations and because NEPA does not apply to nondiscretionary agency action. *Id*. at 28. On the same day that Plaintiffs filed this action, plaintiffs in that case also filed a similar emergency motion based on the same apparent facts in the case before Judge Howell asserting that the government defendants had begun the process of removing the Memorial and requesting that Judge

---

³ This press release is available online at https://media.defense.gov/2022/Oct/06/2003092544/-1/-1/1/IMPLEMENTATION-OF-THE-NAMING-COMMISSIONS-RECOMMENDATIONS.PDF. In accordance with caselaw from this Circuit and others, the Court takes judicial notice of this press release. *See, e.g.*, *Timothy v. Boston Sci. Corp.*, 665 F. App'x 295, 298 n. 4 (4th Cir. 2016) (online FDA notification in products liability action subject to judicial notice); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 720 n. 48 (10th Cir. 2009) (state press release in an environmental action subject to judicial notice).

⁴*See Defend Arlington, et al. v. United States Department of Defense, et al.*, No. 23-cv-441, Memorandum Opinion, Dkt. 37 issued on December 12, 2023 (D.D.C.) ("D.D.C. Opinion").

Howell issue a stay pending their appeal.[5]  On December 18, 2023, Judge Howell denied those plaintiffs' motion for a stay in the case before her by way of Minute Order.

In this action, Plaintiffs allege that Defendants have violated the NEPA, which they pursue by way of the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, by failing to prepare an Environmental Impact Statement regarding the removal of the Memorial.  Dkt. 1 at 8-9.  Defendants alleged failure to comply with NEPA is thus the thrust of Plaintiffs' Complaint and Motion for a Temporary Restraining Order.  Dkt. Nos. 1, 5.[6]  In Plaintiffs' Motion and Memorandum in Support of a Temporary Restraining Order, Plaintiffs assert that Defendants started removal of the Memorial and that Defendants were taking inadequate steps to protect the gravesites at the base of the Memorial.  Dkt. Nos. 2; 3; 5.[7]  On December 18, 2023, out of concern regarding the desecration of the gravesites, this Court granted the temporary restraining order and set a preliminary hearing date.  Dkt. 6.  The temporary restraining order expires at 5:00 p.m. on December 20, 2023.  *Id*.

Late on December 18, 2023, Defendants filed a Motion to Vacate the Temporary Restraining Order. Dkt .9.  Defendants argue that Plaintiffs failed to comply with Rule 65(b)

---

[5] *See Defend Arlington, et al. v. United States Department of Defense, et al.*, No. 23-cv-441, Motion and Supporting Memorandum of Law and Points of Authority for Immediate Emergency Administrative Stay, Dkt. 40 filed on December 17, 2023 (D.D.C.).

[6] The Complaint contains a singular reference to the National Historic Preservation Act ("NHPA"), but nothing in the Complaint describes what alleged violation of that Act took place. Dkt. 1.  Moreover, the Memorandum in Support of the Temporary Restraining Order contains no reference to the NHPA.  Thus, the Court does not view Plaintiffs' claims as being based on any alleged violation of the NHPA.  But even if Plaintiffs had alleged a violation of the NHPA, the results reached here would not change as that issue was also decided by Judge Howell.

[7] The Memorandum in Support of the Restraining Order refers to paragraphs 7 and 8 of the Siegel Declaration.  *See* Dkt. 5 at n.12 & n.13.  The Siegel Declaration contains no such paragraphs.  Dkt. 3 (ending with paragraph 6).

because Plaintiffs' counsel failed to certify the efforts to give notice to Defendants and the reasons why the order should issue *ex parte*. Dkt. 9 at 2 (citing Fed. R. Civ. P. 65(b)). Defendants argue that this failure is particularly egregious given that the parties have been engaged in litigation for months in the District Court for the District of Columbia. *Id*. at 3.

That same day, Defendants also filed an Opposition to Plaintiffs' Motion for Temporary Injunctive Relief. Dkt. 11. Defendants argue that Plaintiffs claims are barred by *res judicata* based on the proceedings in *Defend Arlington, et al., v. United States Department of Defense*, No. 23-cv-441, 2023 WL 8600567 (D.D.C. Dec. 12, 2023). Dkt. 11 at 1. Defendants also assert that the materials submitted by Plaintiffs inaccurately describe the method of removal of the Memorial. Dkt. 11.[8] In support of their Opposition, Defendants submitted: (i) the Declaration of Karen Durham-Aguilera (Dkt. 11-3)("Durham Aguilera Decl."), which asserts that Defendants have completed a review under NEPA and the National Historic Preservation Act, which dealt with the method of removal of the Memorial; (ii) the Environmental Assessment of the Removal of the Confederate Memorial from Arlington National Cemetery (Dkt. 11-4); (iii) the Findings of No Significant Impact Regarding the Removal of the Confederate Memorial from Arlington National Cemetery (Dkt. 11-5); (iv) the Declaration of Renea C. Yates (Dkt. 11-8) ("Yates Decl.") discussing the plans for removal of the Memorial; and (v) the Programmatic Agreement Among Arlington National Cemetery, the Virginia State Historic Preservation Officer, and The Advisory Council on Historic Preservation Regarding the Removal of the Confederate Memorial From Arlington National Cemetery (Dkt. 11-9) ("Memorial Agreement").

---

[8] In addition to the District for the District of Columbia case, Defendants note that Judge Patricia T. Giles of this District, on December 18, 2023, denied a motion for an injunction filed by a *pro se* plaintiff in *Moran v. Austin*, No. 23-cv-1681 (E.D.Va.).

On December 19, 2023, oral argument was heard and counsel representing all parties were present.  At the hearing, Plaintiffs orally moved for a preliminary injunction.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order without written or oral notice to the adverse party.  Fed. R. Civ. P. 65(b).  Where a temporary restraining order is issued without notice, the motion for preliminary injunction must be set for hearing at the earliest possible time.  *Id*.  At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 25 (2008); *see Mountain Valley Pipeline, LLC v. W. Pocahontas Prop. LP.*, 918 F.3d 353, 366 (4th Cir. 2019).  In other words, "such relief is regarded as . . . a 'drastic' use of the court's injunctive power and is never to be granted lightly, but is instead to be used only in limited circumstances which clearly demand it."  *Downing v. Lee*, No. 1:16-cv-1511, 2017 WL 11489270, at *2 (E.D. Va. Feb. 13, 2017) (quoting *Tiffany v. Forbes Custom Boats, Inc.*, 959 F.2d 232 (4th Cir. 1992)).  A party seeking a preliminary injunction must establish that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *Winter,* 555 U.S. at 20; *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023).  "Courts considering whether to impose preliminary injunctions must separately consider each . . . factor." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

7

## ANALYSIS

Where a Temporary Injunction issues without notice, as was the case here, a hearing is required to be held on a motion for preliminary injunction as soon as possible. Fed. R. Civ. P. 65(b)(3). But before reaching that analysis, the Court must determine whether, as alleged in Defendants' Motion to Vacate, the injunction properly issued. Defendants' correctly allege that the injunction should be vacated because Plaintiffs failed to comply with Rule 65(b)(1)(B). Accordingly, the Motion to Vacate will be granted.

Moreover, close review of the matters at issue reveal that there are several of hurdles that stand in the way of Plaintiffs obtaining a preliminary injunction. As an initial matter, Plaintiffs in this case are barred by the doctrine of *res judicata* from pursuing their claims in this Court after having received an adverse ruling before Judge Howell. Moreover, for the reasons that Judge Howell articulated, Plaintiffs have failed to state a claim under the NEPA. Those issues demonstrate that Plaintiffs are unlikely to succeed on the merits of their claims. Moreover, Plaintiffs cannot demonstrate any of the other elements required for a preliminary injunction.[9]

---

[9] Although the parties have not briefed the issue and, ultimately, it is not necessary to reach the issue here, the Court has concerns regarding the standing and injury-in-fact alleged to be suffered by Plaintiffs. The constitutional doctrine of standing serves "to identify those disputes which are appropriately resolved through the judicial process," *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990), in that the party: (i) has suffered an injury in fact that is concrete and particularized and actual or imminent; (ii) the injury is fairly traceable to the challenged action of the defendant; and (iii) it is likely that the injury can be redressed by a favorable decision, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Although Plaintiffs here allege a type of "procedural injury," courts recognize that a "bare procedural violation, divorced from any concrete harm," cannot satisfy Article III's standing requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). In the instant case, the harms to be suffered by many of the Plaintiffs appear generally speculative and not concrete. The Court will not address that issue now without the benefit of further briefing, but, if this case proceeds in any fashion, the parties will need to consider this issue.

A. <u>Compliance with Rule 65(b)</u>

Rule 65(b)(1)(B) provides that, where a temporary restraining order is to issue *ex parte*, Plaintiffs' counsel must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). As Defendants correctly note, "the requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process." *Tchienkou v. Net Trust Mortg.*, No. 10-23, 2010 WL 2375882, at *1 (W.D.Va. June 9, 2010). Here, Plaintiffs did not satisfy this obligation. Instead, Plaintiffs' counsel merely asserted that "Counsel for Plaintiffs will be contacting counsel for DOD simultaneously with the filing of the Complaint and this motion." Dkt. 2. Defendants report that, although the Complaint and motion were filed on Sunday, Plaintiffs' counsel did not even attempt to contact Defendants until Monday.

This is unacceptable given what the Court now knows about the history of the litigation between the parties. Although Plaintiffs were clearly attempting to move quickly, Plaintiffs could and should have attempted to email counsel for Defendants in advance of seeking extraordinary *ex parte* relief. The parties have been involved in lengthy litigation in the District Court for the District of Columbia for months. Plaintiffs appear to suggest that failure to comply with Rule 65(b)(1)(B) is excusable. Plaintiffs have offered no authority to support that argument and Plaintiffs' are incorrect in their perspective. The certification is an obligation that even *pro se* litigants are required to abide by. *See Farabee v. Clarke*, No. 7:16-cv-00325, 2016 WL 7106298, at *1, n. 1 (W.D. Va. Dec. 5, 2016). Accordingly, Plaintiffs failed to meet the requirements for *ex parte* injunctive relief as set forth in the Rules, and the temporary injunction will be vacated.

B. Claim Preclusion

Under the doctrine of *res judicata* or claim preclusion, parties are not permitted to forum shop the same claims against the same parties over and over again seeking a different result. As the Fourth Circuit has recognized, *res judicata* bars claims where: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; (3) resolved claims arising from the same cause of action as the claim at issue. *Chin-Young v. United States*, 774 F. App'x 106, 114 (4th Cir. 2019). This is a "practical doctrine" that looks at whether a party "has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017). Courts apply a "transactional" approach to identifying the scope of a claim, looking to whether a subsequent lawsuit "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) (citation omitted).

The following Plaintiffs were involved in the litigation before Judge Howell in the District Court for the District of Columbia: (i) Defend Arlington; (ii) Save Southern Heritage Florida; (iii) Friends of Judah P. Benjamin Camp of the Sons of Confederate Veterans; (iv) Harold K. Edgerton; (v) Edwin L. Kennedy Jr.; (vi) Teresa E. Roane; and (vii) Richard A. Moomaw. *See* D.D.C. Opinion at 3 (listing plaintiffs involved). The following Defendants involved in this case were also defendants before Judge Howell in the District Court for the District of Columbia: (i) Lloyd Austin; (ii) United States Department of Defense; (iii) William LaPlante; (iv) Christine Wormuth; and (v) the United States Department of the Army. *See id.* (listing defendants involved). Indeed, there are only two differences between the parties involved in this case and the case before Judge Howell: the addition of the Ezekial Family Plaintiffs in this case and the absence of certain other Plaintiffs that were involved in the case before Judge Howell.

The case before Judge Howell also involved resolution of the same claims pending here: whether Defendants were required to perform an environmental impact study or otherwise find that one was unnecessary under NEPA to remove the Memorial. *Comp.* D.D.C. Opinion at 27 *with* Dkt. 1 at 8-9. As Plaintiffs make clear in their Complaint and the Memorandum in support of a Temporary Restraining Order, Plaintiffs are challenging the removal of the Memorial. *See* Dkt. 1 at 9 (asserting that Defendants acted arbitrarily and capriciously by "bypassing required steps under the National Environmental Policy Act (NEPA) . . . *to remove* the Reconciliation Memorial" and seeking to prevent the removal (emphasis added)); Dkt. 5 at 6 ("The removal of the Memorial frustrates the sole mission of Defend Arlington's organization . . . ."). Although Plaintiffs attempted to reframe or amend their Complaint at the hearing by arguing that they are challenging Defendants' NEPA assessments and/or the Memorial Agreements, their arguments are belied by their filings in this case. The Complaint here only mentions the Memorial Agreement in a solitary footnote and does not purport to base the cause of action on that agreement. Indeed, the Complaint suggests that Defendants did not engage in any process under NEPA, so it can hardly be suggested that an ineffective or inappropriate procedure forms the basis for the Complaint. Dkt. 1 at 8. The removal of the Memorial and whether that decision is subject to NEPA was squarely at issue in the District of Columbia Litigation. *See* D.D.C. Opinion at 27-28.

The Memorandum in Support of a Temporary Restraining Order does acknowledge that Defendants engaged in some NEPA analysis. *See* Dkt. 5 at 2. But again, that is not the basis for the relief that Plaintiffs seek in their Motion or in their Complaint, as Plaintiffs make clear that they are challenging what Judge Howell has already ruled upon and arguing that "Defendants' decision that congressionally mandated actions are not subject to NEPA is not supported by the law." Dkt. 5 at 3. Indeed, Plaintiffs repeatedly make arguments regarding the issue of whether

11

"non-discretionary" acts are subject to NEPA, which is the same claim decided by Judge Howell. *Comp.* D.D.C. Opinion at 27-28 *with* Dkt. 5 at 4. Also absent from the Memorandum in Support of the Temporary Restraining Order is any mention of the Memorial Agreement, which Plaintiffs argued at oral argument was the basis of their claims.[10] Moreover, at oral argument, Plaintiffs made reference to many arguments that they conceded that they had also made to Judge Howell, and which Judge Howell rejected. As Plaintiffs make clear, they challenge "the removal of the Memorial" because that is what frustrates their purposes – not the decisions regarding how the Memorial is removed. Dkt. 5 at 6.

There is no question as to the overlap between the parties and the claims at issue in this case and those at issue in the case before Judge Howell.[11] In both cases, Plaintiffs allege that Defendants had violated NEPA by failing to obtain an environmental impact study before deciding to remove the Memorial. Importantly, the Fourth Circuit has recognized that, although *res judicata* is an affirmative defense, it can be raised where it is clear on the face of the complaint because a court may take judicial notice of the facts from a prior judicial proceeding. *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Here, Defendants have raised the argument, and the fact that Plaintiffs are barred by the doctrine of *res judicata* from proceeding with this case underscores the likelihood of success on the merits element of the preliminary injunction analysis.[12]

---

[10] Plaintiffs suggest that they are merely following Judge Howell's suggestions by following another means of challenging Defendants' actions. D.D.C. Opinion at 26. But that is not what Plaintiffs have done here; rather, Plaintiffs' cause of action here is the same as the one pursued in the D.C. litigation.

[11] Indeed, at oral argument, Plaintiffs conceded the alignment between the Plaintiffs in the two cases.

[12] Although the Ezekial Family Plaintiffs do not appear to have been plaintiffs in the District for the District of Columbia case, it is likely that the Ezekial Family Plaintiffs claims are barred by the doctrine of *res judicata* because of the relationship between the Ezekial Family

C. <u>The Merits of the NEPA Claim</u>

Courts recognize that "NEPA applies only where an agency action is discretionary," but where "agency action is non-discretionary and mandated by law, environmental analysis would serve no purpose and NEPA does not apply." *Natural Res. Defense Council v. McCarthy*, 993 F.3d 1243, 1251 (10th Cir. 2021).[13] Thus, this Court must determine whether the decision to implement the Naming Commission's recommendations is discretionary. As Judge Howell sensibly held, they are not. Section 370 of the NDAA proscribes a limited role for the Department of Defense in the removal and renaming of items that honor or commemorate the Confederacy: (1) establish the Naming Commission, *see* NDAA § 370(b); (2) appoint four (of eight) members to the Commission, *see id*. § 370(d)(1); and (3) "implement the plan submitted by the commission" no later than "three years after the date of the enactment of this Act," *see id*. § 370(a). With respect

---

Plaintiffs and the other Plaintiffs. For purposes of claim preclusion, privity exists when the nonparty is "'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997)). Here, members of the Ezekial Family submitted declarations in support of Plaintiffs in the District of Columbia case. As the Fourth Circuit has recognized, nonparties may be bound by a prior litigation where "the nonparty was adequately represented in the action by a party with the same interests." *Duckett v. Fuller*, 819 F.3d 740, 745 (4th Cir. 2016). Moreover, the Fourth Circuit has held that "a party bound by a judgment may not avoid its preclusive effects by relitigating through a proxy." *Id*. Here, it is clear that Plaintiffs are merely attempting to relitigate the District of Columbia case to reach a different result.

[13] *See, e.g.*, *Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir.1995) (collecting cases demonstrating that nondiscretionary agency action is excused from the operation of NEPA); *Sugarloaf Citizens Ass'n v. FERC*, 959 F.2d 508, 513 (4th Cir.1992) ("Other Circuits have held that when an agency has no discretion to consider environmental values implementing a statutory requirement, its actions are ministerial and not subject to NEPA."); *Goos v. ICC*, 911 F.2d 1283, 1296 (8th Cir.1990) ("Because the ICC has not been granted any discretion under section 1247(d) to base its issuance of an NITU or CITU on environmental consequences, we agree that it would make little sense to force the ICC to consider factors which cannot affect its decision."); *Milo Cmty. Hosp. v. Weinberger,* 525 F.2d 144, 147 (1st Cir.1975) (finding that no EIS was necessary where "consideration of the factors that the appellant has characterized as 'environmental considerations' could not have changed the Secretary's decision").

to implementation, Section 370 provides: "the Secretary of Defense shall implement the plan submitted by the [Naming Commission] and remove all names, symbols, displays, monuments, and paraphernalia that honor or commemorate the . . . Confederacy . . . or any person who served voluntarily with the [Confederacy] from all assets of the Department of Defense."  NDAA § 370(a).  As Judge Howell so eloquently noted, the "word 'implement' . . . signals unmistakably that the Secretary of Defense's obligation is to take steps to put into practice the Naming Commission's plan."  D.D.C. Opinion at 22.

Because Defendants did not have discretion to do anything other than implement the recommendations of the Naming Commission, Defendants have not acted arbitrarily or capriciously or in violation of the APA or NEPA.  *See* D.D.C. Opinion at 25-28.  Instead, here, NEPA was not applicable.  *Natural Res. Defense Council*, 993 F.3d at 1251.  Thus, Plaintiffs are unlikely to succeed on the merits of their claims.

Again, it is important to note that, as defined by Plaintiffs' Complaint, Plaintiffs' claim is that Defendants acted arbitrarily and capriciously by "bypassing required steps under the National Environmental Policy Act (NEPA) . . . *to remove* the Reconciliation Memorial" and Plaintiffs seek to prevent the removal.  Dkt. 1 at 9 (emphasis added).  Moreover, as their other arguments make clear, Plaintiffs' goal is to prevent and challenge the nondiscretionary decision to remove the Memorial – not the specific manner in which the Memorial is removed.  *See id*. at 6 ("The removal of the Memorial frustrates the sole mission of Defend Arlington's organization . . . .").  Thus, the root of Plaintiffs' cause of action rests on the nondiscretionary decision to remove the Memorial at all.  Accordingly, Plaintiffs are unlikely to succeed on the merits of their NEPA claim.

D. <u>Remaining Preliminary Injunction Considerations</u>

As the Court has already discussed, the likelihood that *res judicata* applies to bar Plaintiffs from proceeding with their claims and the lack of discretion on behalf of Defendants all establishes that Plaintiffs are unlikely to succeed on the merits of their Complaint. An analysis of the remaining preliminary injunction factors is also unfavorable to the adjudication of Plaintiffs' motion.

It is far from clear that Plaintiffs are likely to suffer irreparable harm. To begin with, Plaintiffs have not alleged facts that support the premise that Defendants intend to "destroy" rather than "remove" the Memorial. Indeed, the parties discussed at oral argument that the Memorial will likely end up reconstituted at another site. Moreover, Plaintiffs had no answer regarding how the deconstruction and removal of the Memorial in the manner planned would result in irreparable harm, given that it appears that the Memorial can be reconstructed at a later time if Plaintiffs ultimately succeed in the claims. Moreover, the injuries alleged by the specific Plaintiffs are generally speculative and not concrete, referring to their own personal beliefs regarding what the Memorial represents and how its removal will make them personally feel, in addition to speculation regarding the economic impact that removal of the Memorial could have on private tours of Arlington National Cemetery. Dkt. 1 at 4-6 (discussing ways in which Plaintiffs are alleged to be harmed). Additionally, the organizational Plaintiffs, including Defend Arlington, do not explain why the moving or removal of the statue undermines the educational resources that they have advanced regarding the Civil War or the historic significance of the Memorial. Surely, the Memorial can still be historically significant to those who share that view without the statue atop it. According to the Final Report, the planned removal would leave in place the base and

foundation of the Memorial as well as the gravesites. Plaintiffs do not explain why the removal of the statue undermines the original significance of the placement of the Memorial.

Importantly, Defendants have now submitted evidence establishing that Plaintiffs' Motion and the Siegel declaration were, at best, ill-informed and, at worst, inaccurate. Dkt. 11 at 10-11.[14] Defendants have submitted the Declaration of Renea C. Yates. In contrast to Plaintiffs' claims that the imminent removal is damaging the gravesites, an allegation that concerned the Court, Defendants make clear that the process for removal has "provided for the utmost protection of burial sites, grave markers, and landscaping using the same protective techniques that the Army requires in its usual ANC burial operations." Dkt. 11-8, Yates Decl. at 1. The information and pictures provided in the Yates Declaration demonstrate that Defendants are taking protective measures and that Plaintiffs' complaints regarding the removal efforts being likely to damage the gravesites are misinformed or misleading. The Court also personally visited the Memorial and it was clear to the Court that Defendants were making every effort to protect and respect the surrounding gravesites.[15]

---

[14] In issuing the Temporary Restraining Order, the Court specifically warned Plaintiffs' counsel that it was relying on counsel's representations as officers of the Court. Dkt. 6, n.1. The Court understands that the references to desecration and destruction of gravesites and the insinuation that Defendants were acting with disrespect may be driven by the passions both real and attenuated that Plaintiffs obviously hold regarding the issues, but going forward the Court expects counsel to be objective regarding critical representations. As was indicated at oral argument, the alleged desecration of the Confederate graves was a major consideration in this Court's granting of the temporary restraining order. This consideration was found to be wholly unjustified.

[15] At the hearing, Plaintiffs' counsel provided photographs regarding how Plaintiffs allege the Memorial appeared on Sunday, December 17, 2023. It is unclear why these photographs were not included with Plaintiffs original submission so that Defendants could have an opportunity to review and respond to the photographs. In any event, the photographs submitted do not alter the Court's view that Defendants are not "desecrating" the gravesites.

Plaintiffs fail to even address the remaining two elements of the test for a preliminary injunction: (i) the balance of the equities; and (ii) that the injunction is in the public interest. *Ramirez*, 142 S. Ct. at 1275. Here, the balance of the equities does not appear to favor Plaintiffs where Plaintiffs have already had a full exploration of these issues before Judge Howell in the District Court for the District of Columbia and where they contemporaneously filed a similar motion seeking an administrative stay of the D.D.C. Opinion. Forum shopping for a different outcome does not push the balance of the equities in Plaintiffs' favor, especially given that Judge Howell specifically noted other options for pursuing a remedy. *See* D.D.C. Opinion at 26. The balance of the equities also cuts against Plaintiffs where Plaintiffs and Plaintiffs' counsel failed to make the Court aware of the litigation before Judge Howell. This is a troubling omission, especially given the involvement of all Plaintiffs in the litigation before Judge Howell[16] and the recency and the breadth of her well-reasoned opinion. Although the Court became aware of that case before issuing the temporary restraining order, the Court was unaware of the complete identity of parties and issues between the two cases. Even assuming that Plaintiffs were correct that they are pursuing different claims than those before Judge Howell (which they are not), this critical omission reveals a lack of candor, in that Plaintiffs would not even mention the extensive litigation that took place in the District of Columbia.[17]

Similarly, Plaintiffs do not establish that a preliminary injunction is in the public interest – this is especially clear where Congress directed that the Secretary of Defense create the Naming

---

[16] Although the Ezekial Family Plaintiffs do not appear to have been parties to the litigation before Judge Howell, members of the Family still participated in that litigation through the submission of declarations.

[17] *See Devereaux v. Colvin*, 844 F. Supp. 1508, 1511 (M.D. Fla. 1994); *c.f. Shea v. Angulo*, 1994 WL 86374, at *1 n. 3 (S.D.N.Y. Mar. 16, 1994).

Commission specifically to evaluate the removal of monuments that commemorate the Confederate States of America and to implement the Naming Commission's recommendations. NDAA § 370(a), (g). At oral argument, Plaintiffs argued that it is in the public interest to leave the Memorial in place, but this is contrary to what Congress directed Defendants to do in establishing the Naming Commission and again reveals that the true purpose of this lawsuit is to achieve here what Plaintiffs could not achieve before Judge Howell.

* * *

In conclusion, Plaintiffs stretched to the limit Rule 65(b)(1)(B) when counsel failed to certify the efforts that they made to provide notice to Defendants – because Plaintiffs provided no such notice. Additionally, Plaintiffs have failed to establish that any of the preliminary injunction factors weigh in favor of issuing a preliminary injunction. Accordingly, it is hereby ORDERED that Plaintiffs' Motion for a Preliminary Injunction is DENIED; and it is

FURTHER ORDERED that the Motion to Vacate (Dkt. 9) is GRANTED; and it is

FURTHER ORDERED that the Order Granting the Motion for a Temporary Restraining Order (Dkt. 6) is VACATED and that Defendants are no longer enjoined from proceeding with removal of the Memorial; and it is

FURTHER ORDERED that, on or before January 12, 2024, the parties should submit briefing regarding how this case should proceed given the Court's rulings in this Memorandum Opinion and Order and whether, given this ruling, the case is now rendered moot.[18]

It is SO ORDERED.

Alexandria, Virginia
December 19, 2023

/s/ 
Rossie D. Alston, Jr.
United States District Judge

---

[18] At oral argument, Defendants indicated that they were not moving for the Court to dismiss the case at this juncture. Accordingly, having no motion before the Court, the Court does not comment on that issue as it is apparently not ripe.